UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANKIE T. HALL, | |
| Plaintiff, | Case No. 14-cv-3290 |
| v. | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Frankie T. Hall sued Defendant Board of Education of the City of Chicago in May 2014, alleging that Defendant discriminated against her on various grounds by suspending her without pay (pending dismissal) from her tenured teaching position in 2013. [1] at 3–4. Plaintiff filed her third amended complaint in June 2017, narrowing her claims to two: interference with a Family and Medical Leave Act (FMLA) entitlement; and retaliation for taking FMLA leave. [131] at 7–9. Defendant moved for summary judgment on both claims. [156]. For the reasons explained below, this Court partially grants and partially denies Defendant's summary judgment motion.

## I. Background

The following facts come primarily from Defendant's Local Rule 56.1 statement of facts [157] and Plaintiff's Local Rule 56.1 statement of additional facts [164]. This Court also takes judicial notice of an Illinois State Board of Education

hearing officer's ruling [180-1] sustaining Defendant's dismissal of Plaintiff from her position. *See Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996) (explaining that courts may properly take judicial notice of decisions from other courts or agencies, including administrative law judges).

### A. Local Rule 56.1 and Evidentiary Rules

Local Rule 56.1 governs how parties present evidence at summary judgment. It requires a party denying a fact to provide "specific references to the affidavits, parts of the record, and other supporting materials" driving the denial. N.D. Ill. L.R. 56.1(b)(3)(B). Thus, a denial that lacks appropriate supporting citations to the record violates Local Rule 56.1, and a court may properly disregard the denial. *See Yost v. Chi. Park Dist.*, 17 F. Supp. 3d 803, 806 (N.D. Ill. 2014).

Despite Local Rule 56.1's requirements, Plaintiff's response to Defendant's statement of facts purports to deny many facts with variations on the following: "Contrary evidence is set forth in Plaintiff's Additional Facts and Sealed Exhibits 1–16 which should be considered with the totality of evidence in support of her claims." *See, e.g.*, [164] at 38. In effect, Plaintiff "points to a proverbial haystack" and asks this Court "to find [her] needle." *Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016). This Court declines to do so. *Id.*; *see also D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (courts have no obligation to "scour the record looking for factual disputes" for litigants); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Because this Court has discretion to enforce Local Rule 56.1, *Boss*, 816 F.3d at 914, this Court

2

deems admitted any of Defendant's facts that Plaintiff denied without providing corresponding *specific* references to the record.

Evidentiary rules also govern how parties present evidence at summary judgment. Parties may rely only upon evidence that would be admissible at trial. *Malin v. Hospira, Inc.*, 762 F.3d 552, 555 (7th Cir. 2014). That said, affidavits and other written forms of testimony can substitute for live testimony at summary judgment. *Id.* at 556. Given such rules, the majority of Plaintiff's remaining denials of fact demonstrate a serious misunderstanding of what constitutes admissible evidence at this stage of the case.

Many of Defendant's facts rely—at least in part—upon a signed and dated declaration from Veronica Thompson, the principal of the school where Plaintiff formerly taught. *See* [162]. Declarations may substitute for affidavits and constitute evidence if they comply with 27 U.S.C. § 1746, which requires a dated signature. *Sheikh v. Grant Reg'l Health Ctr.*, 769 F.3d 549, 551 (7th Cir. 2014). And the Seventh Circuit has "repeatedly emphasized" that parties may not use the term "self-serving" to "denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgement." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). As long as a competent declarant makes statements based upon personal knowledge, the declaration can support a summary judgment motion. *Id.* at 968; *see also* Fed. R. Civ. P. 56(c)(4). In sum, Thompson's declaration is admissible here.

Yet in response to nearly every paragraph in Defendant's statement of facts

that cites Thompson's declaration, Plaintiff responds with a variation of the following: "Disputed on the grounds that this paragraph does not contain any facts to support it as required under LR56.1." *See generally* [164]. These strange denials seemingly indicate that Plaintiff believes that Thompson's declaration, for whatever unspecified reason, does not constitute evidence. But as this Court explained above, Defendant may use that declaration as evidence at this point in the case. And the declaration supports the propositions for which Defendant cites it. For example, Defendant's fact statement reads: "Upon becoming Principal," Thompson "saw her first priority as getting to know the staff and building staff confidence." [157] ¶ 7. Inexplicably, Plaintiff denies that statement because "it does not contain any facts to support it," [164] at 4, but Thompson's declaration states: "Upon becoming Principal of [Hall's school], I saw my first priority as getting to know the staff and building staff confidence," [162] ¶ 5. How would Defendant provide that information other than by having Thompson testify to it? Plaintiff's improper denials fail to controvert Defendant's facts, so this Court deems admitted any fact that Plaintiff improperly denied for lacking "facts to support it." *See* N.D. Ill. L.R. 56.1(a); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Turning to the next evidentiary issue, many of Plaintiff's remaining denials incorrectly categorize Defendant's supporting exhibits as "inadmissible hearsay." *See, e.g.*, [164] at 11–12. But those exhibits, which include records of Thompson observing Plaintiff's classroom and records of meetings held as part of Plaintiff's remediation process, ostensibly qualify as public or business records admissible

4

under the Federal Rules of Evidence. *See* [162] ¶ 37 (Thompson's testimony about Defendant's record-keeping practices); Fed. R. Evid. 803(6). Again, without articulating a viable legal theory, Plaintiff's incorrect hearsay denials fail to controvert Defendant's facts. Thus, this Court deems admitted any fact that Plaintiff denied—wrongly—on grounds of inadmissible hearsay. *See* N.D. Ill. L.R. 56.1(a); *Smith*, 321 F.3d at 683.

Finally, this Court notes that Plaintiff "lodges a general objection" to Defendant's statement of facts based upon the length of some of Defendant's paragraphs and alleged improper legal conclusions. [164] at 1. Plaintiff correctly points out that Local Rule 56.1 requires "short numbered paragraphs," but Plaintiff's statement of additional facts similarly includes many lengthy paragraphs containing multiple statements. *See* [164] at 41. Accordingly, this Court—exercising its discretion to enforce Local Rule 56.1, *Boss*, 816 F.3d at 914—declines to strike either Defendant's statement of facts or Plaintiff's statement of additional facts (for that very same reason), which would leave no facts upon which to issue a ruling and waste the parties' time and resources. This Court also notes that, to the extent any of Defendant's fact statements could be construed as legal conclusions, this Court does not rely upon those specific statements.

**B.    Facts**

Plaintiff previously worked as a writing coach and classroom teacher for Chicago Public Schools. [157] ¶ 6. When Thompson became principal of Plaintiff's school in March 2007, Plaintiff worked as a writing coach; her responsibilities

5

included creating writing curriculum and writing programs. *Id.* Thompson had concerns about Plaintiff's performance as a writing coach, so she reassigned Plaintiff to a classroom teaching position beginning with the 2009–10 school year. *Id.* ¶ 9. Plaintiff emphasizes that Thompson switched her grade assignment every year from that point forward—"for four years until she sought my termination." [170-1] ¶ 15.

Thompson testified that she did not think Plaintiff's performance improved upon returning to the classroom. [157] ¶ 10. Ultimately, after Thompson gave Plaintiff multiple "Unsatisfactory" performance ratings and Plaintiff failed to successfully complete a mandatory remediation process, which this Court discusses in detail below, Defendant suspended Plaintiff without pay in July 2013. *Id.* ¶ 23. Defendant fired Plaintiff in October 2017 after completing the relevant administrative process for firing tenured teachers. [180-1] at 29.

### 1. FMLA Leave

Plaintiff applied for her first FMLA leave in January 2010. [157] ¶ 28. Defendant approved that request and Plaintiff took about three weeks of leave. *Id.* Plaintiff applied for her second leave in March 2012. *Id.* ¶ 29. Defendant approved the initial request for leave, along with two requests for extensions; Plaintiff took three months of leave. *Id.*

When Plaintiff applied for her third FMLA leave in February 2013, Defendant told Plaintiff that she would need a second opinion from another medical provider before Defendant could evaluate her leave request. *Id.* ¶ 30. Defendant

6

received Plaintiff's second opinion in mid-March and retroactively approved Plaintiff's leave request in full from early February to early April 2013. *Id.*

According to Plaintiff, Thompson contacted her multiple times during that 2013 FMLA leave and, among other things, requested that Plaintiff provide emergency lesson plans for the entire leave period and directed Plaintiff to post student grades "even though it was not necessary to post the grades at the time." [170-1] ¶¶ 18–19. Defendant, on the other hand, says that Thompson only contacted Plaintiff with a few non-intrusive questions during her third FMLA leave, such as where she stored emergency lesson plans in the classroom. [157] ¶ 34. Defendant says that Thompson never asked Plaintiff to perform work while on leave. *Id.*

Plaintiff says that Thompson continued interfering with her FMLA leave by setting unfair deadlines when Plaintiff returned to work in April. *See* [170-1] ¶ 20. All teachers owed Thompson a report[1] the day that Plaintiff returned from leave; Thompson granted Plaintiff a one-day extension. [157] ¶ 39. Plaintiff claims that other teachers received "a few weeks" to submit the same report and that Thompson "made it clear" that she would not grant Plaintiff further extensions. [170-1] ¶ 20. Defendant did not discipline Plaintiff in connection with that report. [157] ¶ 39.

### 2. "Unsatisfactory" Ratings and Remediation Process

After several years of rating Plaintiff's performance "Satisfactory"—the second lowest of four possible ratings—Thompson gave Plaintiff an "Unsatisfactory"

---

[1] Defendant refers to a singular report, while Plaintiff switches between plural and singular references in her filings. This Court uses the singular "report," but the distinction does not affect this Court's substantive analysis.

7

rating in June 2012. [157] ¶ 13. Within Chicago Public Schools, teachers who receive "Unsatisfactory" ratings get remediation plans to help them improve their performance. *Id.* After Thompson gave Plaintiff the first "Unsatisfactory" rating, Thompson developed a detailed remediation plan for Plaintiff that included suggestions of many steps she could take to improve her teaching. *Id.*; *see also* [162-4]. Thompson also assigned Dawn Lader as Plaintiff's "consulting teacher"—a high-performing teacher from another school who would observe Plaintiff during the following school year and provide feedback to help Plaintiff improve. [157] ¶ 19.

Then, as required for the remediation process, Thompson and Lader separately observed Plaintiff's classroom many times during the 2012–13 school year. *Id.* ¶¶ 14, 20. Per Defendant's observation policy, Plaintiff and Thompson met before and after each of Thompson's observations. *Id.* ¶ 14. During their first pre-observation conference, Plaintiff "refused to explain what students would know and be able to do by the end of the unit, would not describe how she designed the unit to engage students in learning the standards and declined to explain the objectives, student engagement and assessment related to a particular lesson from the unit." *Id.* ¶ 15.[2] Throughout the remediation process, Plaintiff refused to sign many forms, such as post-observation feedback forms. *See, e.g.*, *id.* ¶ 16.

Thompson observed Plaintiff teach four times during that school year: twice in November 2012, once in January 2013, and once in April 2013. *Id.* ¶¶ 15–18. Each time, Thompson provided Plaintiff with negative feedback, including that she

---

[2] Plaintiff disputes this fact because it "relies on inadmissible hearsay." [164] at 11. Even if Plaintiff's refusals to participate in the meeting qualify as statements, they are not hearsay; they are Plaintiff's own statements that the opposing party offers against her. Fed. R. Evid. 801(d)(2).

8

used incomplete lesson plans, did not prepare materials before class, and did not establish objectives for her classes. *Id.*

Lader provided similar feedback when she observed Plaintiff. Although Lader noted some positives about Plaintiff's teaching, especially earlier in the year, *see* [164] at 40–43; [162-9], her overall observations indicated that Plaintiff struggled to meet expectations. [157] ¶ 20. Lader's feedback throughout the school year included the following:

- "Instruction started at 9:30, 45 minutes [after] arrival. The students spend too much time with breakfast and then clean-up." [162-9] at 11 (November 6, 2012 observation).
- "Teacher allowed too much time to have students just do some 'seat work.'" Thus, "the class had about 30–40 minutes of silent reading or some other finished activity. Teacher could have fit another lesson into that block of time." *Id.* at 13 (November 14, 2012 observation).
- "This is the 3rd time that I showed up and there were personal issues that [Plaintiff] had claimed had the class out of what is normal routine." Also, "I was there for an hour at this point and nothing was taught nor worked on." *Id.* at 20 (January 11, 2013 observation).
- "Planning and preparation has been her weakness thus far and seems to not be getting any better." *Id.* at 21 (January 11, 2013 observation).
- "Teacher gave many threats but did not follow through. Students were probably talking because of lack of supervision/instruction." *Id.* at 24 (January 17, 2013 observation).
- "Mrs. Hall's class has gotten a lot worse since her leave of absence . . . . There was nothing planned for when they finished and the afternoon did not have any planning behind it." *Id.* at 32 (April 19, 2013 observation).
- "Instruction started at 10:15 a.m.," 90 minutes after arrival. *Id.* at 35 (April 24, 2013 observation).
- "No instruction was presented today. In the early afternoon, there were math problems put on the board (about 15). There was no instruction with these problems." *Id.* at 45 (May 17, 2013 observation).

At the 30-day, 60-day, and 90-day marks during the 2012–13 school year, Thompson notified Plaintiff that she still merited an "Unsatisfactory" rating. [157] ¶ 21. In Plaintiff's final review, Thompson identified seven areas of weakness: six

9

areas related to her teaching performance, while the seventh noted an inordinately high number of absences and tardies. *Id.* Thompson testified that the absences and tardies did not count any days for which Plaintiff took FMLA leave. *Id.* Thompson also testified that Plaintiff would have received an "Unsatisfactory" rating even without accounting for the attendance category. *Id.* Finally, Thompson testified that she had given good performance ratings to other teachers who took leave and poor performance ratings to some teachers who did not take leave. *Id.* ¶ 42.

At the end of May 2013, Thompson met with Plaintiff for the 90-day review and told Plaintiff that she would pursue Plaintiff's dismissal "based on her failure to successfully complete remediation." *Id.* ¶ 22. Defendant suspended Plaintiff without pay in July 2013. *Id.* ¶ 23. Plaintiff remained suspended without pay—pending dismissal—until October 2017, when an Illinois State Board of Education hearing officer sustained Plaintiff's dismissal "for unsatisfactory teaching performance." [180-1] at 29.

## II. Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine

10

dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248.

To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014). As the Seventh Circuit has warned time and again, summary judgment "'is the put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Finally, courts must evaluate evidence in the light most favorable to the non-moving party and must refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255).

### III. Analysis

#### A. FMLA Interference

Plaintiff claims that Thompson interfered with her FMLA leave in three ways: (1) by encouraging Defendant "to wrongfully contest Plaintiff's medical certification and require a second opinion before approving" Plaintiff's leave; (2) by "wrongfully contacting" Plaintiff during her leave and requiring Plaintiff to perform job duties while on leave; and (3) by demanding that Plaintiff complete a report within one day of returning from FMLA leave. [131] ¶ 55. Defendant argues that Plaintiff's interference claim fails because she received all FMLA leave to which she

11

was entitled, and because the other conduct that she complains of does not rise to the level of interference. [156] at 7–8.

To succeed on an FMLA interference claim, Plaintiff must establish that: (1) she had FMLA eligibility; (2) the FMLA covered her employer; (3) the FMLA entitled her to take leave; (4) she gave sufficient notice of her intent to take leave; and (5) her employer inappropriately denied her FMLA benefits. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 223 (7th Cir. 2015). The arguments here revolve around the fifth element; the parties do not contest the other four. This Court addresses each of Plaintiff's three grounds for her interference claim in turn.

1. **Second Opinion**

Plaintiff argues that Thompson wrongfully encouraged Defendant to request a second medical opinion before approving Plaintiff's third FMLA leave. This argument fails for several reasons. First, the FMLA allows employers to require that their employees obtain second opinions to demonstrate the medical necessity of taking leave. 29 U.S.C. § 2613; *see also Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997). Second, Plaintiff offers no evidence to show that Thompson played any role in Defendant requesting another opinion, let alone to show that the valid request for another opinion interfered with Plaintiff's leave. After Plaintiff obtained a second opinion, Defendant retroactively approved her leave request in full. [157] ¶ 30. Plaintiff's interference claim cannot survive summary judgment on this theory.

## 2. Job Duties While on Leave

Plaintiff next argues that Thompson interfered with her third FMLA leave by contacting her unnecessarily during her leave and requiring her to perform certain job duties, such as posting grades. Defendant argues that Plaintiff's theory fails because Thompson had only minor contacts with Plaintiff during her leave and did not ask or expect her to perform work while on leave.

The Seventh Circuit has addressed the question of when contact during FMLA leave becomes interference only briefly and indirectly. *See Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 751 (7th Cir. 2009) (employer's request for employee on leave to provide keys and passwords so the employer could continue operating did not constitute interference). Other circuits that have analyzed the issue in more depth agree that employers may properly interrupt an employee's leave with "nondisruptive communications such as short phone calls" asking the employee to "pass on institutional knowledge or property" as a professional courtesy; employers may not, however, require employees on leave to perform work-related tasks or create work product. *See Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1158–59 (8th Cir. 2016) (collecting cases).

Here, Plaintiff's affidavit alleges that Thompson contacted her multiple times during her 2013 FMLA leave and, among other things, "demanded an immediate response" to a question of how to access certain educational standards, requested emergency lesson plans for the entire leave period, and directed Plaintiff to post student grades "even though it was not necessary to post the grades at the time."

[170-1] ¶¶ 18–19. Defendant disputes this story, claiming that Thompson only contacted Plaintiff with a few minor questions and never asked her to perform work while on leave. [157] ¶ 34. Defendant might be right, but on Defendant's summary judgment motion, this Court must evaluate evidence in the light most favorable to Plaintiff, without making credibility determinations between conflicting stories. *Rasho*, 856 F.3d at 477. Under Plaintiff's version of the facts, Thompson crossed the line into interference by demanding that Plaintiff—while on leave—perform work such as providing lesson plans and posting grades. *Massey-Diez*, 826 F.3d at 1159. Thus, this Court denies summary judgment to Defendant on Plaintiff's job-duties theory of interference.

### 3. One-Day Deadline for Report

Finally, Plaintiff argues that Thompson interfered with her third FMLA leave by demanding that she complete a report within one day of returning from leave. Defendant argues that this theory fails because the report did not influence Plaintiff's discipline, eventual suspension, or termination. This Court agrees.

The entire basis for Plaintiff's third theory of interference consists of one paragraph in her affidavit, which reads:

> Additionally, when I returned from FMLA in April, 2013, [Thompson] demanded that I submit certain reports within one day from my returning from leave. Other teachers, who did not take leave, were given a few weeks to submit the same reports. Thompson insisted that I turn in my report within one (1) day and made it clear that the next day was the deadline she imposed on me. Period. No requests for extension would be granted.

[170-1] ¶ 20.

14

Plaintiff offers the one-day deadline as evidence that Defendant ran afoul of the FMLA by failing to adjust performance standards to account for Plaintiff's leave. Although the FMLA does not require employers to adjust performance standards for the time employees remain on the job, it can require employers to adjust performance standards "to avoid penalizing an employee" for absence during FMLA leave. *Pagel v. TIN Inc.*, 695 F.3d 622, 629 (7th Cir. 2012). Essentially, the rule boils down to requiring that an employer not render an employee's protected leave "illusory" by terminating the employee because of "performance problems" that directly resulted from the employee's leave. *Id.* (collecting cases).

For example, in *Lewis v. School District #70*, the Seventh Circuit reversed a grant of summary judgment on an FMLA interference claim for an employer who fired an employee for failing to keep up with full-time bookkeeping duties during her intermittent FMLA leave. 523 F.3d 730, 743 (7th Cir. 2008). In that case, the performance problems that supposedly justified firing the employee directly resulted from her FMLA leave, such that firing her for those reasons rendered her leave "illusory." *Id.*; *see also Pagel*, 695 F.3d at 630 (reversing grant of summary judgment on FMLA interference claim for employer who fired employee for failing to meet standard sales expectations even though the employee missed numerous days for FMLA leave during the relevant sales period).

Even taking the evidence in the light most favorable to Plaintiff, *Rasho*, 856 F.3d at 477, nothing connects the one-day deadline to her suspension and eventual dismissal. In fact, Plaintiff does not even allege that she had any performance

15

problems connected to the one-day deadline; she offers no evidence that she struggled to submit the report by Thompson's deadline. Thompson's evaluations of Plaintiff, which Defendant relied upon in suspending Plaintiff and eventually firing her, do not mention the report (at least as far as the record here reveals, because Plaintiff failed to specify which report Thompson demanded that she turn in so quickly). *See, e.g.*, [162-10] at 11–12. Instead, the evaluations cite Plaintiff's inadequate lesson plans, poor use of classroom instructional time, and missing weekly assessments, among various other things, as her "weaknesses." *Id.*

Thus, although the one-day deadline might have made Plaintiff's return to work unpleasant, nothing in the record suggests that it rendered her FMLA leave "illusory" or led to any negative consequences. *Cf. Pagel*, 695 F.3d at 629. Plaintiff's interference claim cannot survive summary judgment on this theory.

### B. Retaliation for Taking FMLA Leave

Plaintiff argues that Defendant suspended her (and ultimately fired her) in retaliation for Plaintiff taking protected FMLA leave. Defendant counters that it suspended and then fired Plaintiff because of her continued poor performance.

The FMLA prohibits employers from retaliating against employees who exercise or attempt to exercise FMLA rights. 29 U.S.C. § 2615(a)(2); *see also Pagel,* 695 F.3d at 631. In other words, employers cannot use FMLA leave as a negative factor in promotion, firing, or other employment decisions. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008). To succeed on an FMLA retaliation claim, a plaintiff ultimately must show that: (1) she engaged in protected

16

activity; (2) her employer took an adverse employment action against her; and (3) a causal connection existed between the two events. *Malin*, 762 F.3d at 562. The parties contest only causation, so this Court does not address the other elements.

The Seventh Circuit has not decided whether an FMLA plaintiff must show but-for causation after the Supreme Court held, in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), that Title VII retaliation claims require proof of but-for causation instead of substantial-factor causation. *See Malin*, 762 F.3d at 562 n.3. Given the lack of guidance, district courts within the Seventh Circuit have either avoided the question or applied differing standards. *See, e.g.*, *Coleman v. Caterpillar, Inc.*, No. 1:15-cv-01001-SLD-JEH, 2017 WL 3480423, at *9 (C.D. Ill. Sept. 1, 2017) (applying the but-for standard); *Davidson v. Evergreen Park Cmty. High Sch. Dist. 231*, No. 15-cv-0039, 2017 WL 2243096, at *8 (N.D. Ill. May 23, 2017) (applying the substantial-factor standard); *McKenzie v. Seneca Foods Corp.*, No. 16-cv-49-jdp, 2017 WL 1155966, at *5 n.3 (W.D. Wis. Mar. 27, 2017) (avoiding the question). Because the Seventh Circuit has not held that an FMLA plaintiff must prove but-for causation, this Court continues to follow a line of FMLA cases requiring only substantial-factor causation. *See, e.g.*, *Pagel*, 695 F.3d at 631; *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010); *Lewis*, 523 F.3d at 741; *Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006).

The Seventh Circuit has decided, however, that courts addressing employment discrimination claims may not separate evidence into two distinct buckets: the direct method of proof and the indirect method of proof. *Ortiz v.*

17

*Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). Rather, "all evidence belongs in a single pile," and courts should evaluate the evidence holistically to determine whether it permits a reasonable factfinder to conclude that unlawful discrimination caused the adverse employment action. *Id.* at 765–66. Under *Ortiz*, a plaintiff may still build her case through the familiar *McDonnell Douglas* burden-shifting framework. I*d.* at 766. But that framework offers just one of many ways that the record evidence could allow a reasonable factfinder to answer "yes" to the underlying question of "whether the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 666 (N.D. Ill. 2016).

Here, Plaintiff fails to identify a similarly situated employee who did not take FMLA leave and received more favorable treatment from Defendant. Thus, the *McDonnell Douglas* burden-shifting framework has no bearing on this case. Instead, this Court must evaluate Plaintiff's evidence as a whole to determine if it would allow a reasonable factfinder to determine that her use of protected FMLA leave caused her suspension and eventual termination. *See, e.g.*, *id.*

Even assuming (without deciding) that Plaintiff's evidence demonstrates causation, her claim cannot survive summary judgment because Defendant's unrebutted evidence shows that it would have suspended (and later fired) Plaintiff even without any retaliatory motive. *See Goelzer*, 604 F.3d at 995 (citing *Burnett*, 472 F.3d at 481). When a plaintiff offers evidence of retaliatory intent, "the case must proceed to trial *unless* the employer presents unrebutted evidence that it

would have taken the adverse action against the plaintiff even if it did not have a retaliatory motive." *Id.* (emphasis added). This case falls squarely within the *Goelzer/Burnett* rule.

Defendant's unrebutted evidence shows that Plaintiff continued receiving "Unsatisfactory" performance ratings throughout her remediation process, that Plaintiff refused to participate in some of the remediation process, and that Defendant took all necessary steps under the Illinois School Code, 105 ILCS 5/24A-1 *et seq.*, before suspending and ultimately dismissing Plaintiff. [157] ¶¶ 15–16, 21. Also, Thompson gave favorable performance ratings to some teachers who took leave, which indicates that she rated Plaintiff poorly because Plaintiff performed poorly, not because Plaintiff took leave. *Id.* ¶ 42.

Plaintiff argues that Lader's comments showed that Plaintiff improved throughout the year. Not so. Lader periodically made positive comments about Plaintiff's teaching, but the overall tenor of her reviews indicated that Plaintiff failed to meet expectations. For example, in January 2013—more than halfway through the school year, and shortly before Plaintiff took her third FMLA leave—Lader wrote: "Planning and preparation has been her weakness thus far and seems to not be getting any better." [162-9] at 21. When Plaintiff returned from leave, Lader observed: "Mrs. Hall's class has gotten a lot worse since her leave of absence," and "the afternoon did not have any planning behind it." *Id.* at 32.

Because Defendant's unrebutted evidence shows that it would have fired Plaintiff for unsatisfactory performance regardless of any retaliatory intent,

19

*Goelzer*, 604 F.3d at 995, this Court grants summary judgment to Defendant on Plaintiff's FMLA retaliation claim.

## IV. Conclusion

This Court partially grants and partially denies Defendant's summary judgment motion [156]. This Court grants the motion for Plaintiff's FMLA retaliation claim and denies it for Plaintiff's FMLA interference claim. The status hearing set for 1/31/2018 at 9:45 a.m. in Courtroom 1203 stands. The parties shall come prepared to set a trial date at that hearing.

Dated: January 29, 2018

Entered:

_____
John Robert Blakey
United States District Judge